**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IRENE P. GARZA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **CITY OF UVALDE,** | § | **SA-10-CV-0471 OG (NN)** |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**TO: Honorable Orlando Garcia**
**United States District Judge**

This report and recommendation discusses defendant City of Uvalde's (the City) motion for partial summary judgment.[1] I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by recommendation where my authority as a magistrate judge is statutorily constrained.[2] After considering the applicable pleadings and the summary-judgment record, I recommend summary judgment in favor of the City.

**Nature of the case**. Plaintiff Irene P. Garza filed this case under the American's with Disabilities Act (ADA) and alleged the City discriminated against her on the basis

---

[1]Docket entry # 24.

[2]Docket entry # 28.

of disability by terminating her. She also alleged the City unlawfully retaliated against her by terminating her. The court need not consider the latter claim because Garza did not exhaust her administrative remedies as to that claim. Garza did not include a claim of retaliation in her charge of discrimination[3] and no reasonable basis exists for arguing that a claim of retaliation flowed from her charge.

**The City's motion**. The City moved for summary judgment on various grounds: (1) Garza was not qualified to perform the essential tasks of her former job of permits clerk; and (2) Garza rebuffed available accommodation by refusing to train another permits clerk who could have helped her do her job. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]

**The ADA's reasonable accommodation requirement**. The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to…discharge of employees…."[5] Discrimination on the basis of disability includes: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is

---

[3]Docket entry # 24, ex. 9 (charge of discrimination).

[4]Fed. R. Civ. P. 56(a).

[5]42 U.S.C. § 12112(a).

an…employee….”[6] A plaintiff alleging a failure to accommodate must prove: “(1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodations; and (4) the employer had notice of the disability and failed to provide accommodation.”[7] She must also show: “(1) she requested a reasonable accommodation; and (2) that she was a qualified individual with a disability at the time the request for accommodation was made.”[8]

Notwithstanding the foregoing burden, a fact question exists about whether Garza was even terminated, or whether she abandoned her job.[9] As to the elements of her claim, Garza's deposition raised a fact question about: (1) whether Garza is an

---

[6]42 U.S.C. § 12112(b)(5)(A).

[7]*Bridges v. Dep't of Social Services*, No. 00-30804, 2001 WL 502797, at * 1 (5th Cir. Apr. 27, 2001). *See Mzyk v. North East Indep. Sch. Dist.*, No. 10–50037, 2010 WL 3926853, at * 2 n.3 (5th Cir. Sept. 30, 2010) (“To establish a prima facie case of discrimination based on failure to accommodate a disability, Plaintiff was required to show: (1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation.”).

[8]*Cato v. First Fed. Community Bank*, 668 F. Supp. 2d 933, 946 (E.D. Tex.2009).

[9]*Compare* docket entry # 24, ex. A, ¶¶ 6-9 (affidavit of former City Manager John Harrell, attesting that Garza resigned her position), *with* docket entry # 26, ex. A, pp. 69-73 (Garza's deposition, testifying that Harrell told her to leave and that she left because she was terminated).

individual with a disability,[10] (2) whether Garza could perform the essential functions of her former job with or without reasonable accommodations,[11] (3) whether the City had notice of disability,[12] and (4) whether Garza requested accommodation.[13] No fact issue exists, however, about whether the City provided accommodation. The summary-judgment record demonstrates that, to the extent Garza has a disability, the City

---

[10]The ADA defines "disability" as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 CFR § 1630.2(g)(1)(ii). Garza based her disability on fibromyalgia. The City did not expressly challenge whether Garza is disabled, but little in the summary-judgment record indicates fibromyalgia substantially limits one or more of Garza's major life activities. At most, the summary-judgment record indicates Garza has difficulty walking, but no medical evidence record attributes the difficulty to fibromyalgia. To the extent Garza maintains she can perform the essential functions of her former job with or without reasonable accommodations, that position is at odds with her position before the Social Security Administration, claiming the inability to perform substantial gainful activity. *See* docket entry #26, ex. A., p. 25 (testifying she applied for disability benefits).

[11]*Compare* docket entry # 26, ex. A, pp. 43 & 64 (Garza's deposition, testifying that she didn't know whether she could physically do all the work on her own and train someone to help her), *with* docket entry # 26, ex. B, pp. 13 (Garza's former supervisor/friend's deposition, asserting that Garza was very dedicated and did everything asked of her and explaining how they split duties in the permit office). The latter deponent also sued the City in a case transferred to the Del Rio division. *See* Cause No. SA-10-CV-492-FB, docket entry # 2. In that case, Garza's former supervisor alleged the City terminated her based on race, age and retaliation. Cause DR-10-CV-36-AM, docket entry # 1.

[12]*Compare* docket entry # 24, ex. D, pp. 13-14 (City representative's deposition, answering that she did not know whether Garza has a disability and testifying that Garza used a crutch after a shoulder injury), *with* docket entry # 26, ex. A, pp. 15–16 (Garza's deposition, testifying that everyone at City Hall knew she has fibromyalgia).

[13]*Compare* docket entry # 24, ex. D, p. 18 (City representative's deposition, testifying that Garza never requested accommodation), *with* docket entry # 26, ex. A, pp. 17 & 47 (Garza's deposition, admitting that she never presented anything in writing to the City, but maintaining she orally requested accommodation).

provided a reasonable accommodation.

**Whether the City provided reasonable accommodation**. The EEOC regulations define reasonable accommodation as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position…."[14] Garza worked for the City as a permits clerk. A permits clerk: (1) issues permits for efforts like plumbing and electrical work; (2) records birth and death certificates; (3) answers incoming calls for the City, and (4) sells and marks cemetery plots. Garza maintains her fibromyalgia prevents her from lifting the heavy books containing birth certificates and from marking cemetery plots. To the extent, Garza is limited in lifting heavy books and marking cemetery plots, the summary-judgment evidence shows the City accommodated such limitation.

Prior to her termination, Garza worked with the permits supervisor, Maria del Carmen Gutierrez. Garza and Gutierrez are friends and shared tasks in the permit office.[15] At some point, Garza broke her foot (or ankle) and stopped marking cemetery plots.[16] Garza then marked all cemetery plots. When Garza complained about the

---

[14]29 CFR § 1630.2(o)(1)(iii).

[15]Docket entry # 26, ex. A, p. 59 & ex. B, pp. 13 & 17.

[16]Docket entry # 26, ex. B, p. 20.

heavy birth certificate books, Gutierrez moved the books.

Garza was happy with her work arrangement until the permits supervisor job was eliminated due to budget cuts. Gutierrez was transferred to another City department at lower hourly rate. Because the permits office required two employees, the City transferred Melissa Galvan to the permits office.[17] When Garza learned Gutierrez would be transferred, Garza questioned whether she would be able to do all required work without Gutierrez.[18] Rather than work with a new permits clerk, Garza refused to train Galvan, stating that a new person must learn on her own like she had.[19] When questioned by the City Manager about her comments about training a new permits clerk, Garza offered her resignation. The parties disputed what happened next, but that dispute does not bear on whether the City provided accommodation.[20]

Transferring a second person to the permits office was a reasonable accommodation for a person asserting the physical limitations about which Garza complained. Like Gutierrez, Galvan could share duties, so long as Garza trained her.

---

[17]Docket entry # 24, ex. A (discussing personnel changes resulting from budget cuts).

[18]Docket entry # 26, ex. A, pp. 64 -66 & ex. B, p. 32.

[19]Docket entry # 26, ex. A, pp. 43-44 & 61-62 & ex. B, pp. 59; docket entry # 24, ex. A (discussing Garza's refusal to train Gutierrez's replacement). Although Garza stated that she learned on her own, Gutierrez testified that she trained Garza.

[20]Garza maintains the City Manager talked her out of resigning and she agreed to work with Galvan, but that the City Manager latter told her to leave—that she was through. The City maintains that after offering her resignation, Garza abandoned her job and was terminated for job abandonment a few days later.

Dividing tasks so Garza was not required to mark cemetery plots or move the birth certificate books is the type of accommodation that could have enabled Garza to perform the essential functions of her job. That she refused to train a new person evidences that she sought the status quo of working with her friend under the circumstances to which both had grown accustomed, not reasonable accommodation. The ADA provides a right to reasonable accommodation, but it does not give an employee the right to her preferred accommodation.[21] The City is entitled to summary judgment because, to the extent that Garza can prove any other element of her claim, she cannot prove the City failed to accommodate her physical limitations. Garza did not raise a fact question about whether the City provided accommodation.

**Recommendation**. I recommend GRANTING the City' s motion (docket entry # 24), DISMISSING the retaliation claim for failure to exhaust administrative remedies, and ENTERING summary judgment on Garza's ADA claim.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same,

---

[21] *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009).

unless this time period is modified by the district court.[22] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[23] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[24]

**SIGNED** on September 2, 2011.

Nancy Stein Nowak

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[22] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[23] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[24] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).