IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IRENE P. GARZA | § | |
| | § | |
| | § | CIVIL ACTION NO. 5:10-CV-00471OG |
| VS. | § | |
| | § | |
| CITY OF UVALDE | § | |

### PLAINTIFF'S OBJECTIONS TO THE UNITED STATES MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

TO THE HONORABLE DISTRICT JUDGE:

Plaintiff Irene Garza files the following Objections to the United States Magistrate Judge's Memorandum and Recommendation To Grant Defendant's Partial Motion for Summary Judgment (Dkt 31).

**I.**

1.      The Magistrate Judge, in recommending a grant of summary judgment, ignored the summary judgment standard by accepting as true the testimony and evidence offered by Defendant even though it was contradicted by evidence and specifically the affidavit of Plaintiff and Carmen Gutierrez that is essentially disregarded in the Magistrate's Recommendation, and ignored the evidence by improperly weighing the summary judgment evidence and neglecting to draw all reasonable inferences in favor of the nonmovant/Plaintiff.   Accordingly, Plaintiff urges the Court to overrule the Magistrate Judge's ruling.  Moreover, the recommendation fails to address the argument of counsel with regard to the retaliation and termination claims, which claims should proceed to trial

### II. PLAINTIFF'S SPECIFIC OBJECTIONS

2.      Plaintiff specifically objects and seeks a de novo review of the following findings,

conclusions and recommendations:

> Any finding that the City did not discriminate against the Plaintiff based on her disabilities.  It is unclear what the magistrate's determination is.  However, the Magistrate recommends entering summary judgment on Garza's ADA claim (p.7).

> That Defendant's motion be granted because Plaintiff cannot prove the City failed to accommodate her physical limitations (p.7).

> That an order be entered dismissing the retaliation claim for failure to exhaust administrative remedies , without even addressing Plaintiff's arguments (p.7).

> The Recommendation to enter summary judgment in Defendant's favor.

**III.**

## PARTIES

3.      Plaintiff is Irene P. Garza, a former employee of Defendant who was terminated because of the discriminatory, harassing and retaliatory actions of Defendant.

4.      Defendant City of Uvalde is a Texas municipality, who was the former employer of Plaintiff herein.

**IV.**

## FACTS

5.      Plaintiff faithfully worked for the Defendant City of Uvalde since January of 2001 as a clerk in the Permit Department.  Prior to her termination, Plaintiff was a long time civil employee and planned to retire in 2010 with 20 years service.

6.      Defendant is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

7.      Since 2004, Plaintiff has suffered daily pain from fibromyalgia and other medical and physical conditions which substantially limits some of her life activities including walking, standing, bending and lifting which necessitates her daily use of a cane or crutches .

8.      In October 2009, the Office Manager of the Permit Department was transferred to a position with the Municipal Court.   The Plaintiff was expected to take over the Office Manager's responsibilities and to train a new second Permit Clerk.  Based on a past history of failed training sessions with the new Permit Clerk, the Plaintiff knew that the replacement clerk was incapable of performing the daily work, and additionally, the Plaintiff would now have to perform tasks that she was unable to physically perform due to her disability without an accommodation.  Overwhelmed with the prospect of doing the work of 2 people in addition to the impossible physical demands now placed on her, the Plaintiff took her complaints to the City Manager and the Assistant City Manager.

9.      On October 5, the Plaintiff reminded the Defendant of her painful disability that limited her movement and the Plaintiff told the Defendant that she would have to quit if she was not given proper help in the department.

10.     The City Manager talked the Plaintiff out of resigning and the Plaintiff agreed that she would try again to train the new clerk and withdrew her purported resignation.

11.     However, later that day, the City Manager forced the Plaintiff to leave the building, claiming that he had decided to accept her prior resignation after all.  The Plaintiff stated that she understood that she was actually being fired and she asked for a letter of termination with a statement of cause.  The City Manager said that he would give the Plaintiff the letter of termination when it was created.

12.     On November 4, 2009, the Plaintiff received a letter from the City Secretary that re-characterized the actual events of the firing of the Plaintiff by stating that the Plaintiff had voluntarily resigned without notice based on the fact that the Plaintiff left the building during work hours and never returned back to work.

13.     Plaintiff is disabled, as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. §12102(1), as amended.  Plaintiff suffered discrimination and retaliation based on her disability or perception of disability.  The Plaintiff's fibromyalgia and other medical and physical conditions substantially limit some of her life activities including walking, standing, bending and lifting which necessitates her daily use of a cane or crutches.  Prior to her termination, Plaintiff was otherwise qualified and able to perform the essential functions of her job as a Permit Clerk.

14.     Defendant violated the ADA by discriminating against Plaintiff through failure to reasonably accommodate Plaintiff's disability.  Plaintiff could reasonably accommodate the Plaintiff but was unwilling to do so.  Though it was known and obvious to the Defendant that the Plaintiff would require accommodations due to the fact that the Plaintiff used a cane or crutches when walking, the Defendant did not make accommodations when the Plaintiff requested them based on her disability and/or based on the perception of her disability.

15.     Additionally, Defendant violated the ADA by intentionally discriminating against Plaintiff because of her disability, 42 U.S.C. §12203.  Defendant's discriminatory acts include retaliating against and wrongfully terminating the Plaintiff when she complained about Defendant's failure to accommodate her disability or based on the perception of her disability.

16.     Defendant otherwise denied that it was even aware that Plaintiff suffered from a disability but now asks the court to dismiss disability related claims.

## V.

## THE EVIDENCE

17.     Plaintiff has established evidence to create a fact question regarding discrimination and retaliation and wrongful termination as evidenced by the evidence raised in the deposition of Irene Garza, the deposition of Carmen Gutierrez and any other attachments.  Plaintiff establishes

sufficient facts to deny summary judgment.

### A.   Deposition of Plaintiff Irene P. Garza

18.    Plaintiff Irene P. Garza testified that she takes medication every day for fibromyalgia and high blood pressure (depo of Irene Garza at P.7 L.4-13). She testified that she first began working with the City of Uvalde in 2001, working as a permit clerk. When she started, she was never given a job description (depo of Irene Garza at P.10 L. 16-P. 11 L.14 ). She was informed that her job functions were doing permits, including electrical, building, plumbing, birth certificates, death certificates, selling cemetery spaces, answering the phones and other duties. She asserted that the job duties were not sedentary because they had to get up and answer the phone, look for information and attend to customers. They had counter duties and had to handle big heavy books when handling birth certificates, which were extremely heavy. When they sold cemetery plots, they had to go out and show the family what plots were open. They had to mark spaces and had to get on their hands and knees to look for markers; it was physical work (depo of Irene Garza at P. 12L.6-P.14 L.7 ). She testified that she would do physical work quite often. At first, she was able to physically go more often. Towards the end of her career at the City, her illness kept getting worse and worse and she wasn't able to walk real well. She would swell up real bad and her knees got really bad. She'd have to sit for a long time and get up. Her supervisor was trying to help her because she knew about Irene's illness – her fibromyalgia that caused a lot of inflammation, and constant pain in her whole body. Her immediate supervisor Carmen Gutierrez knew about her fibromyalgia and also the supervisor above Carmen Gutierrez, Rodney Hermanson. Her illness and health condition were quite evident and she would talk to her supervisors on a daily basis . Hermanson knew and all of the personnel around them knew...all of City Hall knew about her condition and illness, including the City Manager,

because she told them (depo of Irene Garza at P. 14L.8-P.16 L 7 ).

19.     Plaintiff stated that when they terminated her, her illness was pretty bad and the City knew she was really ill and she brought it to their attention.  They knew she had problems walking because she would use a cane or crutches and she still does.  She stated that the City knew about her illness because they would ask her how she was feeling, how much pain she was in and how her day was going, including City Manager John Harrell and Mr. Joe Cardenas, Asst. City Manager (depo of Irene Garza at P16 L 23-P. 17 L. 18 ).  Her fibromyalgia caused her to be in a lot of pain; it caused a lot of swelling and sometimes caused her to be in bed all day and it is hard to concentrate.  The pain is all over her body, from her head to her feet.  She stated that the City Secretary Audrey Garza also knew how bad her condition was because she looked it up on the internet.  Irene talked to the City Secretary off and on about her condition throughout her years there and one or two years before Irene was terminated by the City (depo of Irene Garza at P. 20L.9-P.21L.25).  Irene used crutches at work and there were times when she had to use them every day (depo of Irene Garza at P. 22L.1-3).

20.     Carmen Gutierrez, her supervisor, would help her with her work by helping her with the heavy birth certificate books, handling the selling of the cemetery spaces and getting off and on the City trucks when necessary.  Carmen would offer help or Irene would ask Carmen for help at times (depo of Irene Garza at P22. L.4-P.23L.8 ).  She requested an accommodation from the City because she brought it to their attention several times that she could not do the walking or heavy lifting, but she was never accommodated.  She brought it to the attention of the City Manager, the Asst. City Manger and the City Secretary.  She told them she could not walk, do heavy lifting and marking of spaces but needed help.  When Irene asked for help, they said they would look into it but nothing was ever done; that is when they decided to get rid of Carmen's

position.  Irene reminded City Manger Harrell and Asst. City Manager Cardenas of her situation.

They told Irene they were going to get Melissa Galvan to help her but that meant Irene was

going to have to take full responsibility of everything in the office  (depo of Irene Garza at P.23

L.9-P.24L.25).

21.     She testified that since she left the City, she was not able to find work. (depo of Irene

Garza at P.25 L.11 ). She testified that as a result of her termination, she filed a charge with the

Equal Employment Opportunity Commission.  She testified Carmen Gutierrez was her office

manager and Rodney Hermanson was the General Manager.  She claimed when she was

terminated it was because of her disability and weight.  She felt if she didn't come in because of

her illness, she wasn't going to have a job.  She felt that the City discriminated against her

because of her disability.  Her fibromyalgia is the reason that Harrell wanted her out (depo of

Irene Garza at P.29 L.25-P.33L.24).  Harrell would counsel her and write her up about her phone

calls, but answering the phones was one of her primary duties (depo of Irene Garza at P.36 L.1-

25).

22.     As part of her EEOC intake form for filing her charge, she stated that she was called into

a meeting with Mr. Cardenas and Mr. Harrell and that Mr. Harrell instructed her to resign

immediately, which is what she told the EEOC as part of her intake form.  She told the EEOC at

intake that Mr. Harrell was very angry, yelling, and started banging the table.  She had offered

her resignation that morning and they did not take it.  She refused and asked Mr. Harrell for a

letter stating why he was terminating her.  They told her they had people willing to testify

regarding complaints about her and that she was not willing to train her assistant Melissa

 (depo of Irene Garza at P. 14L.13-P.15 ).  She stated that she had earlier stated she was not

willing to train Melissa because it would place a greater physical burden on her but later did

agree to train her. In the morning they asked her to train Melissa, after Carmen had been transferred. Irene stated she was not willing to because of her illness and how sick she was. At that time she offered to go ahead and resign. She was told that they did not want her resignation and they wanted her to try and work with Melissa (depo of Irene Garza at P.44 L.3-P.45L.21 ).

23.     In the morning, the City did not accept her resignation. In the afternoon, there was another meeting with Mr. Harrell and Mr. Cardenas. Even though she had previously withdrawn her resignation, they told her they were going to go ahead and accept the resignation and told her to leave. She went back and gathered her things and left City Hall. Prior to her termination, she stated that she had verbally asked for an accommodation on multiple occasions, including Cardenas. However, Gutierrez had been transferred out one week and Irene was fired the following week  (depo of Irene Garza at P.46 L.9-P.48 L7). She stated that she had repeatedly asked for an accommodation based on her disability from Asst City Manager Cardenas. She stated that when she was called into the meeting with Cardenas and Harrell, the whole meeting was about her request for an accommodation (depo of Irene Garza at P.50 L.3-21).

24.     She stated that in her EEOC charge form she checked the discrimination box but not retaliation because she was upset On her charge form, she clearly indicates that her claim is related to the retaliation by discharging her (depo of Irene Garza at P.51 L.3-16 ).

25.     Irene testified that she did not intend to retire in 2010 after she completed her twenty years because she would get credit for her civil service. She testified that the fibromyalgia did not begin to affect her duties at the City until about 2005. She couldn't walk. The fibromyalgia affected her from 2005 but she pushed herself every day to do what she had to do even though she was in pain  (depo of Irene Garza at P.55 L.11-P.58L.4). She never refused to train Galvan . She was called into meet on the day she was terminated because she had complained about a

lack of accommodation that would result because Galvan had shown she could not do the job. Although she had talked about resigning, Cardenas and Harrell talked her out of resigning and she stated she was going to try and train Galvan. However, she was called in in the afternoon and told she was terminated. After she left that afternoon of October 5th when she was told to leave, she came back the following Wednesday October 7th and met with City Secretary Audrey Garza. She later got a letter from Harrell stating that she was terminated for no show, even though he had told her she was terminated and she was told to leave (depo of Irene Garza at P.67 L.5-P.70L.25). She is claiming lost wages because she lost her job and mental anguish due to the stress and depression and emotional distress and mental anguish she suffered as a result of the discrimination and discharge (depo of Irene Garza at P.79 L.1-P. 84L.2116 ).

### B.    Deposition of Former Supervisor Carmen Gutierrez

26.    Carmen Gutierrez testified she started working for the City of Uvalde in 2000, working as a permit clerk. She worked as a permit clerk for two years and later became office manager for the permit office. Irene Garza worked under her supervision starting in 2001 (depo of Carmen Gutierrez at P.9 L.3-P.12L. 15). Rodney Hermanson was her supervisor and Irene's supervisor. She testified that Irene Garza was very dedicated and would do her job duties. She was respectful and helpful and trustworthy and did her work all the time (depo of Carmen Gutierrez at P.13 L.22-P.15L.13).

27.    They shared job duties until Irene Garza fell and broke her leg and when Irene got sick. Irene was diagnosed with fibromyalgia and Irene would have difficulty walking and her joints would swell up and you could see her hands swollen. Carmen verified the job duties described by Irene in Irene's deposition (depo of Carmen Gutierrez at P.19 L.5-P.24L.25). She stated a permit clerk had to do a lot of moving around . Irene had problems lifting the books and

walking, so Carmen would help her.  There were times Irene would ask for help because she was

hurting or had to walk with a crutch or cane.  When Carmen was going to be out, Carmen would

ask supervisor Rodney Hermanson to help Irene(depo of Carmen Gutierrez at P.25L.1-P.

28L.12).  Irene would ask for help because she was hurting.  Carmen knew that Mr. Harrell,

Audrey Garza, Joe Cardenas, Elena Lopez, Christi Zapata, Hermanson and Leanne Ortiz with

the City knew about Irene's physical problems because they knew she was in pain because she

would complain about her pain and she had told them about her diagnosis of Fibromyalgia (depo

of Carmen Gutierrez at P.29L.4-P.30L.25).  Carmen testified Irene would come in with crutches

or a cane often , almost every day.  Anybody that walked into city hall would perceive Irene's

disability (depo of Carmen Gutierrez at P.33 L.20-P.35L.20).

28.      Garza stated that Audrey Garza had stated that she had looked up Irene's condition of

fibromyalgia, contrary to Audrey Garza's representation that she did not know Irene had the

disability when Irene was terminated.  Carmen testified the City did not make accommodations

for Irene and her disability (depo of Carmen Gutierrez at P.36 L.24-P. 38L.9).

## VI.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### AS TO DISCRIMINATION AND RETALIATION CLAIMS

29.      Defendant seeks summary dismissal of all of Plaintiff's claims, contending that Plaintiff

cannot raise a genuine issue of material fact with regard to any of her claims, and that it is

therefore entitled to judgment as a matter of law.

**A.       Discrimination Claims**

30.      Plaintiff was an employee who suffered from a disability or was perceived to have

suffered from a disability.  She requested accommodations but was not provided any by the City

according to her supervisor.  Moreover, Irene's supervisor testified that Irene performed her job

duties.  The evidence demonstrates that Plaintiff was discharged or constructively discharged and thus suffered an adverse employment action.  There are questions of fact as demonstrated by the facts set out above and Defendant's summary judgment should be denied.

31.     Title I of the Americans with Disabilities Act addresses disability-based discrimination in the employment context.  Title I's main provision prohibits employers from:

> discriminat [ing] against a qualified individual with a
> disability because of the disability of such an individual
> in regard to job application procedures, the hiring,
> advancement, or discharge of employees, employee
> compensation, job training, and other terms and conditions,
> and privileges of employment."

42 U.S.C. §12112(a).  To prove a claim for disability based discrimination, a plaintiff must show that: (1) she is qualified for her position; (2) she has a disability; and (3) she was discriminated against because of her disability.  *Jenkins v. Cleco Power, LLC,* 487 F.3d 309, 315 (5th Cir. 2007); *Picard v. St. Tammany Parish Hospital,* 611 F.Supp. 2d 608 (E.D. La. 2009).

32.     The ADA defines disability as a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. §12102(1)(A).  A physical impairment may include "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss . . . " *Picard, supra,* at 613.  Major life activities "are those activities that are of central importance to most people's everyday lives." *Jenkins, supra,* at 315.  Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Mason v. United Air Lines, Inc.,* 274 F.3d 314, 317 (5th Cir. 2001) (quoting 29 C.F.R. §1630.2(I).

33.     A major life activity will be considered "substantially limited" when the individual is unable to perform a major life activity that the average person in the general population can perform; or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  *McInnis v. Alamo Cmty Coll. Dist.,* 207 F.3d 276, 280 (5th Cir. 2000) (quoting 29 C.F.R. §1630.2(j).  In determining whether an impairment is substantially limiting, courts may

consider the nature and severity of the impairment, the expected duration of the impairment, and the expected permanent or long term impact resulting from the impairment. *EEOC v. Agro Distribution, LLC,* 555 F.3d 462, 470 (5th Cir. 2009).

34.     The ADA imposes an affirmative duty on covered employers to reasonably accommodate the known physical and mental limitations of their disabled employees. Failure to make such an accommodation is a prohibited form of discrimination. *Picard, supra,* at 618; *see* 42 U.S.C. §12112(a). The ADA prohibition against discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. §12112(b)(5)(a). Plaintiff was not provided an accommodation. Employers are, therefore, under a duty to provide their disabled employees with reasonable accommodations "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." *Picard, supra,* at 619. Because the failure to reasonably accommodate an employee's disability is, by definition, a failure to provide that employee with an equal employment opportunity, the court in *Picard* found it unnecessary to prove a separate "adverse employment action" element in a failure to accommodate case. *Picard, supra,* at 620. This finding is in agreement with an unpublished Fifth Circuit decision, as well as with the Fifth Circuit Pattern Jury Instructions. *See Bridges v. Dept. of Social Services,* 254 F.3d 71, 2001 WL 502797 at *1 (5th Cir. 2001) (unpublished); Fifth Circuit Pattern Jury Instructions: Civil §11.7.2 (2006 ed.). Other circuits agree: *Rodal v. Anesthesia Group of Onondoga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004); *Stevens v. Illinois Dept. of Transp.,* 210 F.3d 732, 736 (7th Cir. 2000).

**B.     Exhaustion of Administrative Remedies**

35.     This argument was not even addressed by te Magistrate. As demonstrated by the EEOC charge, the sole claim set out by Plaintiff is that she was discriminated against by Defendant and terminated. Moreover, any EEOC investigation based on the charge and the intake, as set out in her deposition, demonstrate that the investigation would have involved investigation of her termination.

36.     Checking the box for retaliation is not the key, but instead, it is the factual information given to the EEOC, so even if there is no box checked, if the factual allegations include clearly retaliatory conduct, it is acceptable. *See, e.g., Alvarado v. Shipley Donut Flour & Supply Co.,*

*Inc.*, 526 F.Supp.2d 746, 764 n.36 (S.D. Tex. 2007) ("The retaliation box on the EEOC Charge is not checked. However, because the Charge's narrative alleges Rivera's threat, described above, a retaliation claim could 'reasonably be expected to grow' out of the Charge."); *Ollie v. Plano Independent School Dist.*, 565 F. Supp. 2d 740, 742-43 (E.D. Tex. 2007) ("If, by looking to either the factual allegations or the checked boxes, a specific type of discrimination claim could reasonably be expected to grow out of the allegations in an EEOC charge, then the plaintiff has exhausted her administrative remedies."); *Brown v. Peterson*, 2006 WL 349805, at *7-8 (N.D. Tex. Feb. 3, 2006). Defendant's contentions are without merit and summary judgment should be denied. This argument was not even addressed in the Magistrate's recommendation.

## VII.

### PRAYER FOR RELIEF

37.     PREMISES CONSIDERED, Plaintiff prays that the Defendant's motion be denied in whole or in part. That the Magistrate's Recommendation be denied, in whole or in part, and for such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

By:_____
            **ADAM PONCIO**
            **State Bar No. 16109800**

**PONCIO LAW OFFICES, P.C.**
**5410 Fredericksburg Road, Suite 109**
**San Antonio, Texas 78229-3550**
**Telephone:    (210) 212-7979**
**Facsimile:    (210) 212-5880**

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following attorneys of record:

Patrick C. Bernal                                  **E-NOTIFICATION**
Denton, Navarro, Rocha & Bernal
2517 N. Main Avenue
San Antonio, Texas 78212
(210) 227-3243 Telephone
(210) 225-4481 Facsimile


_____
ADAM PONCIO